IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR301 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| VICTOR M. ARISTA-HERRERA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the motion to suppress filed by the defendant Victor M. Arista-Herrera (Arista-Herrera) (Filing No. 11). The defendant is charged in an Indictment with the possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Arista-Herrera seeks to suppress all evidence obtained from Arista-Herrera as a result of a traffic stop by the Omaha Police Department (OPD) on July 16, 2005, near 20th and Vinton Streets, in Omaha, Nebraska.

An evidentiary hearing on the motion was held on December 16, 2005. Arista-Herrera was represented by Assistant Federal Public Defender Michael F. Maloney and the United States was represented by Special Assistant U.S. Attorney Thomas J. Kangior. Chandler Thompson, a certified interpreter in the Spanish language, served as the interpreter by remote telephone hook-up. The court heard the testimony of OPD Officers Kara J. Hindman (Officer Hindman), Chris Duffek (Officer Duffek), and Robert Branch, Jr. (Officer Branch). The court also received into evidence the following exhibits: photographs of defendant's vehicle (Exhibit 1); an OPD Incident Report (Exhibit 101); a photograph of defendant and baggies seized (Exhibit 102). A transcript (TR.) of the hearing was filed on December 27, 2005 (Filing No. 31). There was no post-hearing briefing.

**FINDINGS OF FACT**

On the evening of July 16, 2005, Officer Hindman was on directed patrol with Officer Duffek in Omaha, Nebraska (TR. 4). Both officers are assigned to the South Gang Unit and were riding in an unmarked black Chevy Impala (TR. 4). Neither officer was in uniform;

they were wearing black raid vests with a police badge in the left corner and with the word "POLICE" on the back of the vest (TR. 4). Around 9:00 p.m., the officers received a call via a Nextel cell phone from Officer Branch who told them that a Hispanic male in his early thirties would be driving a green Chevy-type vehicle in the area of 20th and Vinton Streets in Omaha (TR. 5). Officer Branch stated a confidential informant had told him that the Hispanic male was possibly in possession of approximately four ounces of methamphetamine (TR. 5-6). Officers Hindman and Duffek drove to the area of 20th and Vinton Streets to look for the vehicle described by Officer Branch (TR. 6). The officers were unable to find the vehicle and returned to their patrol (TR. 6).

Approximately thirty minutes later, Officers Hindman and Duffek returned to area of 20th and Vinton Street since that area is part of their regular patrol (TR. 6-7). Upon their return to the area approximately thirty minutes later, Officers Hindman and Duffek observed a green Chevy Malibu or Cavalier vehicle matching the description provided by Officer Branch (TR. 7; 57-58). The officers ran a routine license plate check of the vehicle (TR. 7). The check came back as "no record found", which could have meant several things (TR. 8). One was that the plates belonged to a different vehicle which was no longer registered; another, was that the license plates were expired; another was the plates could be fictitious, i.e., somebody made or altered the plates (TR. 8). All of the forgoing would be traffic violations (TR. 8). The officers began to follow the vehicle (TR. 9). As the Chevy turned southbound on 20th Street, the vehicle failed to signal its turn, which was a traffic violation (TR. 9). Further, the officers observed items hanging from the rear view mirror which would constitute a vision obstruction (TR. 10). The officers engaged their emergency lights and pulled the Chevy over in the vicinity of 20th and Vinton Streets (TR. 10).

Officer Hindman approached on the passenger side of the Malibu and Officer Duffek approached on the driver's side (TR. 10). Officer Hindman observed an open twelve ounce bottle of Bud Light beer and a single occupant, the driver, Arista-Herrera (TR. 10-11). As Officer Duffek was making contact with Arista-Herrera, Officer Hindman announced a Code 2 which was a signal for Officer Duffek to pull Arista-Herrera out of the car and place him under arrest for the open container (TR. 11). Officer Duffek asked, in English, for Arista-Herrera to step out of the car (TR. 11). Arista-Herrera complied and stepped to the rear

of the car behind the driver's side door (TR. 12). Officer Hindman joined Officer Duffek and Arista-Herrera at the side of the car (TR. 12). Officer Duffek then told Arista-Herrera to place his hands on top of the car and Arista-Herrera complied (TR. 12). Officer Duffek began to conduct a pat down of Arista-Herrera (TR. 13). As the pat down commenced and progressed to the lower body, Officer Hindman observed Arista-Herrera tense up and begin to remove his right hand from the top of the car (TR. 13). Officer Hindman moved to grab his right hand (TR. 13). Before the pat down was complete, Arista-Herrera began to swing his arms wildly at both officers and started to run away (TR. 14). Officer Duffek applied a Level 1 lateral vascular neck restraint (LVNR) on Arista-Herrera (TR. 14). As Officer Duffek was applying the LVNR, he took Arista-Herrera to the ground with Officer Duffek lying on the pavement with Arista-Herrera on top of Officer Duffek (TR. 15). Arista-Herrera continued to kick, roll and yell (TR. 15). Both officers were yelling at Arista-Herrera to stop fighting, stop resisting, and put his hands behind his back (TR. 15). Officer Hindman attempted to assist Officer Duffek by grabbing Arista-Herrera's legs and radioed for assistance (TR. 16).

The fight continued between Arista-Herrera and Officers Hindman and Duffek for about two to four minutes before other OPD officers arrived to assist (TR. 17). Arista-Herrera managed to roll over and place his arms under his chest which caused concern to the officers that Arista-Herrera was reaching for a weapon (TR. 18). OPD Officer Wells arrived and jumped on Arista-Herrera delivering elbow strikes to Arista-Herrera (TR. 18). Officer Duffek was kicked in the nose by Officer Wells as Officer Wells pounced on Arista-Herrera (TR. 47). Arista-Herrera continued to resist during this period of time (TR. 48-49). Along with OPD Sergeant Dessler who arrived at the scene, Arista-Herrera was subdued and placed in handcuffs (TR. 19).

Since there was a gash on Arista-Herrera's forehead, a cut above the right eye, and blood coming from Arista-Herrera's nose from the struggle, a rescue squad was called to the scene (TR. 19; 35). Arista-Herrera was taken to the hospital by an ambulance in which Officer Hindman accompanied Arista-Herrera (TR. 20). While Arista-Herrera was on the stretcher, Officer Hindman observed a large bulge, which Officer Hindman suspected to be narcotics, in Arista-Herrera's groin area (TR. 20). After Arista-Herrera was subdued at the

scene, his attitude changed and he became more pleasant (TR. 21).  Officer Hindman recalled that Arista-Herrera flirted with her in English during the ambulance ride to the hospital (TR. 21). Upon arrival at the hospital, Arista-Herrera was placed in a bed after the handcuffs were repositioned so that his arms were handcuffed to bed rails rather than behind his back (TR. 21).  Officer Hindman informed Officer Duffek of the bulge she observed and Officer Duffek searched Arista-Herrera by pulling down Arista-Herrera's jogging pants and recovered a baggie of methamphetamine which was attached to the drawstring of the pants (TR. 22).  During this search, Arista-Herrera was pleasant and noncombative (TR. 22).

## LEGAL ANALYSIS

Arista-Herrera asserts there was insufficient probable cause to stop his vehicle, and that once stopped, excessive force was used to arrest and search him.  As such Arista-Herrera asserts that his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution were violated and that any evidence seized should be excluded as "fruit of the poisonous tree."  The government asserts Arista-Herrera was stopped because he committed a traffic violation, he was arrested for an open container violation, the search of Arista-Herrera's person was incident to arrest, and Arista-Herrera suffered injuries in his arrest because he assaulted officers and otherwise resisted arrest.

While Arista-Herrera drew the attention of OPD officers because of the kind of car he was driving, i.e., a green Chevy type vehicle, and because of the area in which he was driving, i.e., 20th and Vinton Streets, Officers Hindman and Duffek stopped Arista-Herrera because they observed two traffic violations.  These traffic violations. i.e., failure to signal a turn and obstructed vision, both constituted probable cause that the driver of the green Chevy type vehicle was committing a traffic violation.  "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle."  ***United States v. $404,905.00 in U.S. Currency,*** 182 F.3d 643, 646 (8th Cir. 1999) **citing** ***Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977).  "Even assuming [the police officer] was looking for [the defendant], it would be "objectively reasonable" to pull over a vehicle which was" engaging in a traffic offense.  ***United States v. Miller***, 20 F.3d 926, 929 (8th Cir. 1994).  Thus, the

4

fact the officers were suspicious of the green Chevy based on Officer Branch's previous call relaying informant information on drug activity is immaterial to the stop. The court finds Officers Hindman and Duffek lawfully stopped and detained Arista-Herrera.

Once the officers approached Arista-Herrera's vehicle, Officer Hindman observed an open beer container in the vehicle, a violation of law, and directed Arista-Herrera be arrested. After Arista-Herrera alighted from his vehicle, Officer Duffek began to pat him down as part of the arrest process. There is no dispute in the evidence that as soon as Officer Duffek reached Arista-Herrera's midsection in the pat-down, Arista-Herrera went "ballistic." Officer Duffek attempted to apply a LVNR and was taken to the pavement by Arista-Herrea. Further, Officer Hindman attempted to restrain Arista-Herrera by grabbing his feet. Officers Duffek and Hindman were concerned not only with the resistance to arrest but that Arista-Herrera was attempting to gain access to a weapon which may be secreted around Arista-Herrera's waistline. Only after two other OPD officers arrived several minutes later was Arista-Herrera subdued. As Arista-Herrera was being subdued, Officer Duffek was accidentally kicked in the face by Officer Wells. There was no evidence of permanent or life-threatening injuries sustained by Arista-Herrea. While Exhibit 102 shows Arista-Herrera bloodied face and is startling, the injuries sustained are compatible with the force necessary to subdue Arista-Herrera who was rolling and kicking the officers who were trying to subdue him. The court finds that the force used to subdue and arrest Arista-Herrera was objectively reasonable and not excessive as to violate Arista-Herrera's constitutional rights.

Assuming, *arguendo,* the force used to arrest Arista-Herrera could be considered excessive and violate Arista-Herrera's rights under the Fourth Amendment, the question would arise as to whether such violation would give rise to the suppression of any evidence discovered subsequent to the arrest. The "Fourth Amendment reasonableness standard (1) applies to 'all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen.' " 3 Wayne R. LaFave, **Search & Seizure**, § 5.1(d) at 42 (4th ed. 2004) (**citing *Graham v. Connor***, 490 U.S. 593 (1989)). Professor LaFave suggests that evidence brought about by excessive force in violation of the Fourth Amendment should be suppressed. *Id.* at 44

5

(**citing** ***Schmerber v. California***, 384 U.S. 757 (1966) (holding the nonconsensual taking of a blood sample did not involve excessive force and thereby violate defendant's constitutional rights)). In ***Rochlin v. California***, 342 U.S. 165 (1952), the Supreme Court held that the warrantless nonconsensual obtaining of evidence from a defendant's body by use of a stomach pump violated the defendant's due process rights under the Fourteenth Amendment and voided the defendant's conviction for illegal possession of morphine.

The reported cases concerning excessive force are those dealing with Fourth Amendment violations giving rise to the civil liability of police officers utilizing excessive force and the exclusion of evidence in criminal cases when such evidence was directly obtained by excessive force. The court has found no cases reported which find excessive force is a basis to exclude evidence not found in the act of gaining custody of the person by use of excessive force but found later on such person after taken into custody by excessive force. Professor LaFave suggests that suppression is warranted finding no difference between evidence discovered by a constitutional violation of breaking into a premise to arrest someone versus the use of excessive force to arrest someone. 3 Wayne R. LaFave, ***Search & Seizure***, § 5.1(d) at 45 (**citing** William J. Stuntz, ***Privacy's Problem & The Law of Criminal Procedure***, 93 Mich.L.Rev. 1016, 1072 (1995) ("causal connection between the police misconduct and finding the evidence is convenient, but it need not be crucial")).

The exclusionary rule prohibits the admission of evidence unconstitutionally obtained. ***Weeks v. United States***, 232 U.S. 383 (1914). The rule also applies to evidence, tangible and testimonial, which was derived, directly or indirectly, from the unconstitutionally obtained evidence, i.e., the "fruit of the poisonous tree." ***Wong Sun v. United States***, 371 U.S. 471, 487 (1963); ***Nardone v. United States***, 308 U.S. 338 (1939); ***Silverthorne Lumber Co. v. United States***, 251 U.S. 385 (1920). Even though the exclusionary rule may require the exclusion of all evidence obtained by exploitation of an illegal search and seizure, the evidence may still be admissible into evidence if the evidence is gained by means sufficiently distinguishable to be purged of the primary taint of the illegality. To that extent, three general exceptions have been carved from the exclusionary rule. The first exception has been called the "attenuated connection" where

the chain between the challenged evidence and the primary taint of illegality is so long or only linked by sophisticated argument that exclusion of the evidence is not warranted.  **See Wong Sun**, 371 U.S. at 487-88; **Nardone**, 308 U.S. at 338.  The second exception has been called the "independent source" exception where evidence is admissible if the government can show it derived the evidence from a lawful source independent of the illegal conduct giving rise to the primary taint.  **See Silverthorne Lumber Co.**, 251 U.S. at 385.  The third exception has been labeled the "inevitable discovery" doctrine where the government can establish that it would have inevitably discovered the challenged evidence without reference to the illegal conduct giving rise to the primary taint.  **See Nix v. Williams**, 467 U.S. 431 (1984).

Following the holding in **Nix**, the Eighth Circuit held that "[t]o succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence:  (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation."  **United States v. Conner**, 127 F.3d 663, 667 (8th Cir. 1997).  In this case, Arista-Herrera was going to be arrested whether he resisted or not.  Arista-Herrera would be searched by the police officers incident to that arrest.  Evidence discovered in a warrantless search incident to arrest is admissible. **Chimel v. California**, 395 U.S. 752, 762-63 (1969).  The fact that the search of Arista-Herrera took place in the hospital some time after his arrest is immaterial.  **United States v. Edwards**, 415 U.S. 800 (1974); **see also United States v. Robinson**, 414 U.S. 1973) (search at hospital after arrest).  Accordingly, the courts finds Arista-Herrera would have been arrested even if the police officers did not use allegedly excessive force to arrest Arista-Herrera and Arista Herrera would have been searched at the scene or at the police station incident to his arrest fulfilling both prongs of **Conner**.  The inevitable discovery doctrine exception to the exclusionary rule would apply in this case and the evidence seized from Arista-Herrera's waist area in the hospital by Officer Duffek would be admissible in evidence.  Arista-Herrera's remedy for any alleged excessive force used to arrest him would lie in a civil proceeding to remedy any violation of his constitutional rights.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that** Victor M. Arista-Herrera's motion to suppress (Filing No. 11) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of February, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge